FILED

MAR 26 2020

TIMOTHY M. O'BRIEN CLERK
By_____ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Thomas R. McLean,                          )
                                           )
                    Plaintiff,             )
                                           )
v.                                         )     Case No. 20 - 2145 - JWB - JPO
                                           )
Mark A. Morgan in his capacity as the Acting )
Commissioner of U.S. Customs and           )
Border Protection (CBP) on behalf of       )
the U.S. Customs and Border Protection,    )
                                           )
                    Defendant.             )

## MOTION FOR SUMMARY JUDGMENT

**FACTS:**

(1) On 26 February 2019, I applied for acceptance into the Global Entry Program

(GEP or the "Program"[1]); and was issued membership number 154419712.

(2) The Customs and Border Protection Agency's (hereafter the CBP or the

"Agency") application asked:

   a. only about prior criminal convictions (Exhibit A[2]) and recent non-

   adjudicated arrests.[3]

   b. the application did not ask the applicant to disclose:

---

[1] The CBP refers to applicants who have been successfully screened as a "Trust Travelers." DHS: Trusted Traveler Programs; https://ttp.dhs.gov/ (accessed 9 Mar 20).

[2] This screen shot from the CPB's website was taken February 27, 2020.

[3] *See infra* note 8 and related text re: non-eligibility to participate in the Program.

      i.  prior remote adjudicate arrests; which are otherwise known as convictions;

      ii.  prior remote non-adjudicated arrests; for which the applicant was never convicted; and

      iii.  the conviction's severity or time served.

(3) On 2 June 2019, my application for the GEP was given conditional approval and I was invited to sit for a personal interview and finger printing.

(4) On 15 September 2019, after returning from Iceland, I presented myself to the CBP agents at the Kansas City International Airport (KCI). I was interviewed and fingerprinted.

(5) On 30 September 2019, I receive notice that I was denied participation in the Program.[4]

    a.  This notice did not provided me with a reason for the denial.

    b.  This was shocking because, while I plead *nolo contrendere* to a misdemeanor more than 20 years ago, I could not image a <u>proper</u> reason why I should not be allowed to participate in the GEP. (This misdemeanor was disclosed in the Global Entry application; *see infra.*)

---

[4] The CPB no longer provides me with access to this document. Accordingly, this document could not be included as an Exhibit.

    c.  Figuring that the CBP was mistaken, I immediately requested reconsideration. I did not submit any additional documents when I requested reconsideration because

        i.  I was provided with no reason for the Agency's denial of may participation in the GEP;

        ii.  I could not imagine any other document that CBP would need to evaluate me; and

        iii.  I answered all of the CBP application questions completely and truthfully.

(6) On 2 October 2019 and 4 November 2019, I sent an email to the CBP (customs@mailfg.custhelp.com) requesting the reason why I was denied participation in the Program. To this day, I have not received a response from CBP for either of these emails.

(7) On 4 November 2019, I received notice from the CBP that it had affirmed its decision to deny me participation in the Program.[5]  Again the CBP failed to disclose the reason for denying my application.

(8) On 7 November 2019, I submitted an FOIA request to the CBP.

    a.  This request was assigned the number CBP-2020-010649.

---

[5] Id.

    b.  I requested only the reason for why my Global Entry application (#154419712) had been denied.

(9) On 18 December 2019, I received notice from no-reply@foiaonline.gov that "CBP-2020-010649 had been processed with the following final disposition: "No Records." Exhibit B.

    a.  No reason for the denial was included in the email.

    b.  Nothing in this communication indicated that I had appeal rights or access to an Ombudsman.

    c.  The attachment to this email was corrupted and would not open on several computers.

    d.  That same day (18 December 20) I sent an email to the CBP (customs@mailfg.custhelp.com) stating that I could not open the attachment; and would the CBP kindly resend the attachment.

        i.  I received an error message to my email of December 18th; and resent my request to the CBP on 23 December 2019. I did not receive an error message regarding this communication.

        ii.  To this day, I have not received a response to my email of December 23rd.

(10)     On 18 December 2019, I submitted a second FOIA request to the CBP.

    a.  This request was assigned the number CBP-2020-021729.

    b.  This requested stated: "Having been denied participation in the Global

        Traveler program, I request the entire file associated with application for

        membership number 154419712; and any other relevant documents in the

        position, custody or control of the Customs and Boarder Patrol. A pdf copy

        of the documents will be acceptable (I do not need a hard copy)." (sic.)

(11)     On 8 January 2020, the CBP responded to FOIA request CBP-2020-

    021729. Exhibit C contains copies of the documents I received from the CPB.

        a.  I was told the CBP had no response because I had submitted an "Improper

          FOIA Request for Other Reasons." Exhibit C1.

             i.  This notice stated that I have 90 day to appeal this decision.

            ii.  I elected to file a formal appeal to CPB' first level FOIA denial.

        b.  Attached to the CPB' first level FOIA denial email (¶11(a)) was an

          insufficiency notice; which appears to be a standard "boiler plate" form

          letter (Exhibit C2).

        c.  A second attachment to this email (¶11(a)) provided instruction for

          contacting an Ombudsman.

             i.  This document is labeled "Insufficient Request Notice." Exhibit C3.

            ii.  The document in ¶(11)(c)(i) clearly states in the second sentence: "If

               you were denied entry in a Trusted Traveler program, you should

               have been provided information in writing detailing the reason for

               this action."

      iii.  Up until this date, I had not received directly from the CBP any reason, (let alone a detailed reason), for why I was denied entry into the Program.[6]

(12)      On 10 January 2020, I filed an appeal of my FIOA denial; and requested the assistance of the CBP's Ombudsman. (Exhibit D is the proof my letter was served upon the CBP's Ombudsman.)

    a.  To this day, I have not received a response from the CPB's Ombudsman.[7]

    b.  My appeal (Exhibit E) was assigned the number: CBP-AP-028745.

(13)      On February 25, 2020, I received notice from the CBP's FIOA's appeals board that it had "Complete Reversed/Remanded" the first level FOIA review process.

    a.  The FIOA appeals board notice consisted of a cover email and two attachments.

        i.  One of the attached documents (Exhibit F1) was a redacted copy of my GEP application as it had been annotated by the CBP.

---

[6] I only receive a reason for my denial by filing multiple FOIA requests.

[7] This statement is made notwithstanding the "Ombudsman's" annotation to the Program's Application (Exhibit F1) because the annotated comment was never intended to be communicated to me.

ii. The second attached document (Exhibit F2) provided an explanation as to why some of the material in my annotated application had been redacted.

b. Neither document provides a specific reason for why my application was denied.

c. However, the annotated application on page 4 states:

> OMBUDSMAN SUSTAIN: denial sustained for applicant who did not provide any background information or court document stating the severity level and final disposition for his (2) Battery arrests in 1996 and his DUI in 2010.

d. Other than statement in ¶13c (immediately above), the annotated application does not provide any hint, suggestion, or allude to a reasonably cogent implication (*cf.* let alone a cogent explanation) as to why my application to the GEP was rejected.

(14)    On 25 February 2020, through the CPB's webpage, I sent the CBP a message pointing out that the denial of my GEP application was based on information that was not in the scope of the application; and requesting that I be allowed to reapply with the Program and that the CPB should waive the $100 dollar fee used to cover the background check (because such a check had already been performed). Exhibit G.

(15)    On 26 February 2020, the CPB notified me that their denial decision was final. Exhibit H.

**LAW:**

Review of an agency's action is ripe for judicial review when a final decision is issue by the agency or administrative remedies have been exhausted. *Dahlkemper v. Saul*, Civil Action No. 18-380 (WD Penn. 2020).

Under the doctrine of consular nonreviewability, "a consular officer's decision to deny a visa is immune from judicial review." *Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 123 (2d Cir. 2009). The doctrine of consular nonreviewability "is broad in scope, precluding a court from reviewing a consular officer's decision to deny a visa even if that decision's foundation was erroneous, arbitrary, or contrary to agency regulations." *Lleshi v. Kerry*, 127 F. Supp. 3d 196, 200 (S.D.N.Y. 2015) (internal quotations omitted). However, the Supreme Court has never extended this doctrine to individual admissibility determinations by CBP officers. *See American Academy of Religion v. Chertoff*, 463 F. Supp. 2d 400, 418 (S.D.N.Y. 2006). "The doctrine of consular nonreviewability applies to review of a consular official's decision to issue or withhold a visa, not to the decisions of non-consular officials and certainly not to DHS." *Id*. (internal quotations omitted). *See also Atanackovic v. Duke*, 399 F. Supp. 3d 79, 87-88 (WD NY 2019).

A district court is to "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2)(A).

The "judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Chevron, U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837, 843 n.9 (1984). However, a district court is not to substitute its judgment for the agency's judgement. *Travelers to Preserve Overton Park v Volpe*, 401 U.S. at 416, 91 S.Ct. 814 (1971). Thus the review of an agency's decision-making is to be "highly deferential," in that the agency action is presumed valid. *Associated Fisheries v Daley*, 127 F.3d 104, 109 (1st Cir. 1997); *see also Knapp v. Dep't of Agric.*, 796 F.3d 445, 453 (5th Cir. 2015). "The agency decision need only have a rational basis, and it does not have to be a decision which the court would have made." *Wilson v. U.S. Dep't of Agric.*, 991 F.2d 1211, 1215 (5th Cir.1993). In reviewing a challenge to the agency's decision, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *HIAS v. Trump*, Civil No. PJM 19-3346, (D. Maryland 2020) *citing Camp v Pitts*, 411 US 138, 142 (1973); *see also Luminant Generation  v. EPA*, 714 F.3d 841, 850 (5th Cir. 2013). Thus, agency decisions are to be set aside only when they are arbitrary or capricious. *Public Traveler v. FAA*, 988 F.2d 186, 197 (D.C.Cir.1993).  But, notwithstanding the deferential standard, district courts are not to provide agency decisions with "rubber stamp" approval. *Dubois v U.S. Dep't of Agric.*,  102 F.3d 1273,1285 (1996). Indeed, the Court "must undertake a `thorough, probing, in-depth review' and a `searching and careful' inquiry into the record." *Id. (quoting Overton Park*, 401 U.S. at 415-16).

An agency decision is arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983); *see also Wilson v. U.S. Dep't of Agric.*, 991 F.2d at 1215. More specifically, an agency acts in an arbitrary and capricious manor if the agency

> lacks a rational basis for adopting it, — for example, <u>if the agency relied on improper factors</u>, failed to consider pertinent aspects of the problem, offered a rationale contradicting the evidence before it, or <u>reached a conclusion so implausible that it cannot be attributed to a difference of opinion or the application of agency expertise</u>."

*Associated Fisheries*, 127 F.3d at 109 (emphasis added). An agency acts in an arbitrary or capricious fashion when it makes a decision that "irrationally departs from an agency's governing policy." *Venetian Casino Resort, LLC v. EEOC,* 530 F.3d 925, 935 (D.C.Cir. 2008). An agency must cogently explain why it has exercised its discretion in a given manner. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 48. Importantly, an agency's "action is arbitrary, capricious, or an abuse of discretion when it "frustrate[s] the policy that Congress sought to implement." *FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 32, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981). Importantly, "the law frowns on [agencies] playing Gotcha and relying on an obvious mistake to gain an unconscionable or opportunistic advantage." *Silva v. Fortis Benefits*, 437 F. Supp. 2d 819, 823 at FN4 (ND Ill. 2006).

The CBP has published criteria for eligibility to the Program (not at issue here) and ineligibility to the Program. According to the CBP's website an applicant to the Program "may not be eligible" if the applicant provides "false or incomplete information on the application;" or has "been convicted of any criminal offense or has pending criminal charges or outstanding warrants (to include driving under the influence)."[8]

## ANALYSIS OF THE APPLICATION OF THE LAW TO THE FACTS IN THIS CASE:

This case is ripe for trial. The CBP's email to me on 25 February 2020 (Exhibit G) clearly indicates that the agency's decision regarding my application to the GEP ("the Program") is final. I have also exhausted my CPB FOIA options (Exhibit F). In addition, this case is subject to judicial review because it does not involve any consular action. *American Academy of Religion*, 463 F. Supp. 2d at 418.

---

[8] https://www.cbp.gov/travel/trusted-traveler-programs/global-entry/eligibility (accessed 3 Mar 20; this page was last updated on 4 Dec 17)(emphasis added).

MOTION FOR SUMMARY JUDGEMENT: McLean v CBP

The Program, which is administered by the CBP, is voluntary and was created to facilitate US border crossing for "for pre-approved, low-risk international travelers."[9] Congress authorized the creation of the GEP to include:

> as many participants as practicable by establishing a reasonable cost of enrollment, making program enrollment convenient and easily accessible, and providing applicants with clear and consistent eligibility guidelines.[10]

Although a US traveler has no right to participate in the Program, the CBP must still adjudicate a traveler's application to the Program in accordance with the principles of the Administration Proceedings Act (APA).[11] If the CBP has a rational basis for the rejecting a traveler's application for the Program, then the agency's action should be upheld (*Wilson*, 991 F.2d at 1215). Conversely, when the CBP rejects a traveler's application to Program because the agency's decision-making was done in an arbitrary or capricious manor, then the agency's decision is to be overturned (5 U.S.C. § 706 (2)(A); *Pub. Traveler*, 988 F.2d at 197). To determine whether the CBP had a rational basis to reject my application to the Program, this Court is to conduct a careful "probing, in-depth

---

[9] CBP: *CBP Global Entry and Mobile Passport Control App Help You Get Home Quicker* (29 March 2018; https://www.cbp.gov/newsroom/local-media-release/cbp-global-entry-and-mobile-passport-control-app-help-you-get-home (accessed 1 March 2020).

[10] 74 FR 59932 (Proposed Rule) *citing* the INTELLIGENCE REFORM AND TERRORISM PREVENTION ACT OF 2004 (IRTPA), 118 Stat. 3638, *as amended* by section 565 of the CONSOLIDATED APPROPRIATIONS ACT, 2008, 121 Stat. 1844, codified at 8 U.S.C. 1365b. Emphasis added.

[11] *Magneson v. Mabus*, 174 F. Supp. 3d 114 (Dist. of Columbia 2016).

review" of the CBP's review of my application (*Overton Park*, 401 U.S. at 415-16); and this Court is not to merely "rubber stamp" the CBP's rejection of my application to the Program (*Dubois*, 102 F.3d at 1285).

The procedure used by the CPB to adjudicate my application is completely analogous to the practice of "bait and switch" used by disreputable merchants. "Bait and switch" has been defined as an "action (generally illegal) of advertising goods which are an apparent bargain, with the intention of substituting inferior or more expensive goods."[12] "Cases in which the government has been found to violate the implied duty of good faith and fair dealing typically involve some variation on the old bait-and-switch." *Precision Pine & Timber v. US*, 596 F. 3d 817, 829 (Federal Circuit 2010); *see also Dorr-Oliver, Inc. v. Fluid Quip,* 94 F.3d 376, 382 (7th Circuit 1996). Under Kansas law, bait and switch would be a violation of the Consumer Protection Law. K.S.A. 50-626(b)(6)(prohibiting "offering property or services without intent to supply reasonable, expectable public demand, unless the offer discloses the limitation.")

---

[12] Dictionary.com (accessed 4 Mar 20). *See also* Cornell Law: *Bait and Switch.* https://www.law.cornell.edu/wex/bait_and_switch (accessed 4 Mar 20)( "A dishonest sales practice in which a business advertises a bargain price for an item in order to draw customers in and then tells the prospective buyer that the advertised item is of poor quality or no longer available and attempts to switch the customer to a more expensive product.").

In my case (and in the case of many other applicants like me), I was lured into applying to the Program and paying $100 for a background check, only to find that CBP had no intention of granting approval to my application because (as discussed below) the CBP evaluated my application with undisclosed criteria in order to catch me in a Gotcha.

In my case the Agency's sole reason for rejecting my application was my failure to "provide any background information or court document stating the severity level and final disposition for [my] (2) Battery arrests in 1996 and his DUI in 2010." ¶13c *supra*. In short the Agency's position is that because I was less than candid in my application (I did not disclose an arrest for battery and an arrest for DUI –both of which occurred in the remote past), I was not a "low-risk international traveler." *See FN9* and the related text. Unfortunately, the Agency's rationale and logic have been taken entirely out of context; and therefore the CBP made an arbitrary and capricious decision regarding my application.

I am a licensed attorney;[13] and as such I have been trained to answer only the question(s) placed before me. The CPB's application for the Program asks the applicant to disclose their prior "convictions." *See* Exhibit A. The CPB's concern with convictions (not remote non-adjudicated arrests) is echoed on it webpage. *See* FN8. Having read the

---

[13] The CBP knows that I am attorney because the Program's applicants to disclose their occupation. *See* Exhibit F1.

Agency's webpage and having read the Agency's application question, there is no question that the CPB only asked applicants to disclose their prior convictions and their recent non-adjudicated arrests.

Indeed, the CPB's webpage states travelers <u>may</u> not be eligible to participate in the Program if they have prior criminal convictions "or has <u>pending</u> criminal charges or <u>outstanding</u> warrants (to include driving under the influence)."[14] I will concede that the statement "has pending criminal charges" implicitly contemplates prior arrests. In context, however, the phrase "has pending criminal charges" specifically contemplates recent arrests –arrests that have not yet been adjudicated. At the time of my application to the Program my alleged undisclosed arrest for Battery was 23 years old; and my alleged undisclosed DUI arrest was 9 years prior. Both of these arrests were clearly not recent. The CBP is a legally sophisticated person. Had the Agency wanted information about my (or any other traveler's) prior remote arrests that did not lead to a conviction, the CPB could have, and should have, explicitly asked applicants to disclose such information; *i.e.*, "all prior arrests."[15]

---

[14] *See supra*, note 8.

[15] For example, applications for admission to the Bar frequently ask applicants to disclose prior convictions and all prior arrests.

Because the CBP's application only asked for disclosure of convictions and recent non-adjudicated arrests, I truthfully disclosed that in 1996 I plead *nolo contrendere* to a single count[16] of Domestic Violence.[17] It is true that, in 1996, I was charged with a second count of Battery. However, I was never convicted. See Exhibit I. Similarly, it is true that in 2010, I was arrested for DUI. Again I was never convicted of this charge because I successfully completed a diversion program. *See* Exhibit J. As part of the application process to the Program, I was required to pay $100 ostensible to cover the cost of background check. After discovering that I had a second arrest for Battery (23 year ago) and one for DUI (9 years ago), the CBP –knowing that it had only asked for disclosures concerning convictions and recent non-adjudicated arrests, the CBP could have investigated my background more carefully to discover that I had not been convicted of the second charge of Battery or the DUI charge. Indeed, the CBP knew, or should have known, that after nine or more years after a criminal arrest, that arrest should have either been adjudicated to a conviction or dismissed for some reason (*viz.* here: prosecutor discretion and completion of a diversion program).

---

[16] Johnson Country Court, 96DV00590. I satisfactory completed 9 months of probation for this charge.

[17] In Kansas, Battery (K.S.A. § 21-5413) and Domestic Violence (K.S.A. § 21-5414) are different offences. Since the time I was arrested I have always described (*e.g.*, in the Kansas Bar application) my offense as Domestic Violence because that is what I was told that I had been charged with at the time of my arrest. However, in preparing this document, for the first time, I learned that plead *nolo contendre* to Battery.

In essence, the CBP evaluated my application (and the applications of other applicants who read "conviction" as "conviction not arrest") with a Gotcha mentality. The Merriam Webster dictionary defines "Gotcha" as "an attempt to embarrass, expose, or disgrace someone (such as a politician) with a [G]otcha."[18] Having bait me to apply to the Program, the CBP the switch the criteria for evaluating my application from the publish standard of convictions and prior recent non-adjudicated arrests to a non-published standard of all prior conventions and all prior arrest (regardless of when the arrest had occurred). When I failed to disclose all of my prior remote arrests, the Agency had me in a "Gotcha" –as in "we got the applicant for making a "false or incomplete" application so now we get to deny the applicant the privilege of participating in the Program.[19] Unfortunately for the Agency, the "law frowns on [agencies] playing Gotcha and relying on an obvious mistake to gain an unconscionable or opportunistic advantage." *Silva,* 437 F. Supp. 2d at 823.

More generally, I do not believe the Agency singled me out for an individual (*i.e.,* isolated) Gotcha review. Accordingly, the Agency appears to be systematically using a bait and switch strategy in order to catch all applicants with prior remote non-adjudicated arrests in a Gotcha lie and then deny the applicants participation in the Program. The

---

[18] https://www.merriam-webster.com/dictionary/gotcha (accessed 3 Mar 2020).

[19] *See supra*, note 8.

Agency's adjudication of any applicants' applications with remote prior arrests,[20] as discussed below, where not reviewed on a rational basis standard or a standard of "prior consistent agency ruling;" but rather Agency's review of my application, and any other applicant who prior remote non-adjudicated arrests, was conducted in an arbitrary or capricious manner.

The SCOTUS has opined that an agency's decision-making is arbitrary or capricious if the agency has "entirely failed to consider an important aspect of the problem, ... or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs,* 463 U.S. at 43. More specifically, an agency acts in an arbitrary or capricious manor if the agency "relied on improper factors, failed to consider pertinent aspects of the problem [in order to reach] a conclusion so implausible that it cannot be attributed to a difference of opinion or the application of agency expertise." *Associated Fisheries*, 127 F.3d at 109 (emphasis added).

---

[20] While on a national basis no one probably knows the exact number of misdemeanor arrests and the number of major traffic (*e.g.,* DUI) arrests that are never formally adjudicated; but, these are certainly a very large number of such arrests. From a policy perspective, this means that the CBP, through its use of the bait and switch review standard and Gotchas, is in a position to deny a very large number of travelers' participation in the Program.

An act is improper if is "not in accordance with accepted rules or standards, especially of morality or honesty."[21] By considering facts that the CBP did not ask for – *viz.* my complete arrest record- so as to catch me in a Gotcha, the Agency demonstrated that it had relied on improper facts to deny my applications. The CBP repeatedly refused to disclose the reason why my application was denied (in the initial denial letter, in the second denial letter, after my email, and in response to my first-round FOIA request). With each denial, the Agency signaled that it knew that it had considered improper facts when denying my application to the program. See my FOIA appeal – Exhibit E. After all, why else would the Agency stonewall my requests for the reason for my denial to participate in the Program; especially when the Agency knew[22] it had an obligation to provide a concise reason for its denial?

The Agency admitted that I was entitled to receive a reason for being denied participation in the Program).[23] This Agency obligation flows directly from the SCOTUS opinion in *Motor Vehicle Mfrs.* (463 at 48). When the CPB stonewalled me by refusing to disclose its reason for denying my application to me, the Agency failed to cogently

---

[21] Dictionary.com.

[22] *Supra* ¶11(c)(ii)(the Agency admitted that I was entitled to a reason for being denied participation in the Program); *Motor Vehicle Mfrs.*, 463 at 48.

[23] *Supra* ¶11(c)(ii).

explain itself because the Agency had used an improper procedure to review my application to the Program. This is important because had Agency initially disclosed the reason why my application was denied, my rebuttal contained herein in this Motion for Summary Judgment would have been submitted to the Agency at that time – and we would not be here today.

The CPB failed to consider "pertinent aspects of" my application when it failed to take into consideration that I was an attorney. The Agency knew I was an attorney; and it knew or should have known that attorneys are trained to answer only the questions that are asked. When the application asked for only convictions and recent non-adjudicated arrests to be disclosed, I truthfully disclosed my one conviction. Had the application also asked for all my prior arrests, I would have disclosed my two additional arrests –as I had previously done on my Bar applications. And when the CPB imported improper facts about my arrest record and failed to consider that I was an attorney in good standing, the Agency reach a "conclusion so implausible that it cannot be attributed to a difference of opinion or the application of agency expertise." Associated Fisheries, 127 F.3d at 109. Indeed when the Agency played Gotcha with me, the Agency's "game" –for lack of a better word- had nothing to do with the Agency's expertise. Rather when the Agency played Gotcha with me (and many similar travelers), the Agency was only attempting to gain an unfair advantage. Accordingly, the CPB's evaluation of my application reached

an erroneous conclusion because the Agency acted in an arbitrary or capricious manner. *Silva*, 437 F. Supp. 2d at 823 at FN4.

Additionally, an agency's "action is arbitrary, capricious, or an abuse of discretion" when it "frustrate[s] the policy that Congress sought to implement." *FEC*, 454 U.S. at 32. Congress authorized the creation of the GEP to include:

> as many participants as practicable by establishing a reasonable cost of enrollment, making program enrollment convenient and easily accessible, and providing applicants with clear and consistent eligibility guidelines.[24]

Congress has no intent to make US travelers wait in airport lines –unless it necessary. That Congress' intent was to have as many travelers as possible or practicable to participate in the Program –as stated in the quote above- could not be clearer. When the CPB ran its bait and switch review process on my application so as to use a Gotcha to deny my application, the Agency frustrated Congress' intent that the Program be open to as many travelers as practicable. Again, I do not think that CBP singled my application out to play Gotcha. The Agency's adoption of the bait and switch/Gotcha review strategy to deny travelers who failed to disclose prior remote non-adjudicated arrests entry to the Program, the CPB clearly frustrated Congress' intent when it established the Program to have as many travelers as practicable participate in this Program.

Congress also intended that applicants to the Program be providing "with clear and consistent eligibility guidelines.[25] The CPB's website and the Program's application

---

[24] *Supra, see* note 10.

make it clear that applicants are to disclose prior convictions. In addition, I (and the public) can read the CPB's statement for information pertaining to "pending criminal charges or outstanding warrants (to include driving under the influence)"[26] and understand that the Agency is only asking for recent arrests that have not been adjudicated. The Agency's request for disclosure or recent non-adjudicated arrests is not applicable to me. My non-adjudicated arrests occurred more than nine years in the past at the time of my application to the Program. It is inconceivable that the Agency could contemplate that a nine year old arrest had not been adjudicate to a conviction or dismissed for other reasons.  (Considering arrests that are dismissed for other reasons would be highly prejudicial to finding a "low-risk international traveler.[27]) Importantly, the Agency's arbitrary and capricious actions do not end there. An agency acts in an arbitrary or capricious fashion when it makes a decision that "irrationally departs from an agency's governing policy." *Venetian Casino Resort,* 530 F.3d at 935.  When the Agency shifted its standard for reviewing my application from the published criteria of convictions and recent prior non-adjudicated arrests to an unpublished standard of "all" arrests, the agency irrational departed from its own governing policy. *Id.*

---

[25] Id.

[26] *Supra, see* note 8.

[27] *Supra, see* note 9.

In short, when the Agency plays Gotcha to limit the number of participants in the Program and when the Agency failed to articulate clear instruction about disclosure of prior arrests, the CPB frustrated Congress' intent in establishing the Program. *Chevron,* 467 U.S. at 843 n.9. Accordingly, when the Agency reviewed my application, the CPB has acted in an arbitrary and capricious manner. *Id.*

In evaluating this Motion for Summary Judgment, the Court must grant deference to the Agency and not substitute its judgment for the Agency's judgement. This is a fancy way of saying that I have the burden of proof to show that CPB has made a clear mistake (*i.e.,* an arbitrary or capricious mistake). I have shown that in adjudicating my application to the program the Agency acted in an arbitrary or capricious when it:

- Improperly considered facts concerning my ancient arrest record
- Failed to explain or disclose (until I had appealed the first level FIOA denial[28]) the reasoning behind its decision to deny my application
- Failed to consider pertinent aspects of application (*viz.* that an attorney would only answer the questions answered)
- Frustrated Congressional intent by

---

[28] When the FIOA appellate Board issued its Complete Reversed/Remanded ruling and then disclosed the reason for my denial (Exhibit F1), it became clear that Agency should have made this disclosure from right up front. *See* my FOIA appellate brief (Exhibit E). It is *unconconsionable* that the Agency should be allowed to stonewall applicants to the program in this way. *Id.*

o   Adopting a Bait and Switch / Gotcha review standard that limits the number
of applicants to the Program

o   Failing to articulate and disseminate clear eligibility guidelines (with
respect to prior arrests) for participating in the Program

Case law on arbitrary or capricious agency actions requires that I only demonstrate
one reason why the CBP's decision was arbitrary or capricious to prevail. One
application of arbitrary or capricious logic by an agency means that the agency no longer
has a rational basis for its decision. Herein, I have demonstrated five different ways that
the CBP's review of my application was arbitrary and capricious. Accordingly, I have
carried my burden of the proof and am entitled to Summary Judgment. Because District
Courts are not to act as "rubber stamps for the CPB's decision-making (*Dubois v U.S.
Dep't of Agric.*, 102 F.3d at 1285), this Court must overturn the CBP's decision regarding
my application because the Agency's decision was made in an arbitrary or capricious
fashion (5 U.S.C. §706(2)(A)) .

## **RELIEF SOUGHT**

When this Court finds that the CBP's review and decision-making regarding my
applications was either arbitrary, capricious, or both, the relief prayed for is that the CBP
be ordered to:

(1) Approve my application so that I may participate in the Program

(2) Reimburse me for my filing fees and all other expenses incurred during this

litigation

(3) Review, in light of this decision, all of the Agency's GEP applications and re-

adjudicate any application where the Agency denied, in whole or in part, a traveler

participation in the Program because the CPB considered the applicant's remote

prior arrests that were not formally adjudicated to a conviction.

(4) Place in the application to the Program and in the eligibility requirements to the

Program that the Agency seeks disclosure of all prior arrests.

(5) That the Agency be ordered not to harass me –*e.g.*, by subjecting me to baseless

secondary screen procedures at any airport –because I filed this lawsuit.

Finally, when this Court finds that the CBP's review and decision-making regarding

my applications was either arbitrary, capricious, or both, I request that the Court publish

its opinion.

Respectfully submitted and filed with the Clerk of the Court on ___26 March 2020___, by

Thomas R. McLean, *pro se*

4970 Park
Shawnee, KS, 66216
913-525-5526
tmcllc1999@gmail.com